**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Home Depot U.S.A., Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **Illinois Union Insurance Company,** ) | |
| ) | |
| **Defendant.** ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Home Depot U.S.A., Inc. (hereinafter "Home Depot"), by and through its attorneys, McVey & Parsky, LLC, and for its Complaint for Declaratory Judgment against Illinois Union Insurance Company (hereinafter "Illinois Union") pursuant to 28 U.S.C. § 2201, states as follows:

**INTRODUCTION**

1. This action arises from Illinois Union's failure to respond to Home Depot's tender of defense and indemnity for a lawsuit filed in Massachusetts. Home Depot is entitled to defense and indemnity under the Illinois Union insurance policy, and requests that this Court enter a judgment finding the same.

**PARTIES, JURISDICTION AND VENUE**

2. Home Depot U.S.A., Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

1

3. Upon information and belief, Illinois Union Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

4. Upon information and belief, Illinois Union is in the business of selling insurance products and does in fact sell insurance products within the state of Illinois.

5. This court has personal jurisdiction over Illinois Union because it is located in Illinois and does business within this state.

6. Pursuant to 28 U.S.C. § 1332, this court has jurisdiction over this subject matter because the parties are citizens of different states and the matter in controversy exceeds the value of $75,000 exclusive of interest and costs.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Illinois because the defendant, Illinois Union Insurance Company, resides within this district.

## HOME DEPOT'S CONTRACT WITH FEDDERS

8. Home Depot and Fedders North America Inc. entered into a contract called a "Supplier Buying Agreement" (hereinafter "SBA") whereby Fedders agreed to sell certain goods to Home Depot pursuant to the terms of the SBA. A copy of the relevant terms of the SBA is attached hereto as **Exhibit A**.

9. Alternatively, Home Depot and Fedders Corporation entered into a contract called a "Supplier Buying Agreement" (hereinafter "SBA") whereby Fedders agreed to sell certain goods to Home Depot pursuant to the terms of the SBA. A copy of the relevant terms of the SBA is attached hereto as **Exhibit A**.

10. Alternatively, Home Depot and both Fedders Corporation and Fedders North America Inc. enter entered into a contract called a "Supplier Buying

Agreement" (hereinafter "SBA") whereby Fedders Corporation and Fedders North America Inc. agreed to sell certain goods to Home Depot pursuant to the terms of the SBA. A copy of the relevant terms of the SBA is attached hereto as **Exhibit A**.

11. Fedders North America Inc. and Fedders Corporation shall be referred to collectively as "Fedders".

12. Upon information and belief, Fedders is currently in bankruptcy.

13. Upon information and belief, Fedders supplied Home Depot with a certain model of dehumidifier, a Hampton Bay HB-50 dehumidifier.

14. Upon information and belief, the Hampton Bay HB-50 dehumidifier contained a capacitor manufactured by Samwha U.S.A., Inc.

15. As the retailer, Home Depot sold the Hampton Bay HB-50 dehumidifiers to the public.

16. The SBA requires that Fedders indemnify and defend Home Depot in actions arising from its products, as follows:

> **6.1 Supplier agrees that it shall indemnify, defend, and hold The Home Depot (which for the purpose of Sections 6 and 7 shall include its parent, affliates, subsidiaries, associates, directors, officers, employees, and agents) harmless against and from any and all claims, lawsuits, judgments, losses, Recalls, civil penalties or actions, costs liabilities, damages, and expenses (including attorneys' fees) incurred or to be incurred, which may be made or brought against The Home Depot by any person…arising or alleged to have arisen (a) out of the…damage to any property which resulted or is alleged to have resulted from…the merchandise or its use…. This agreement to indemnify, defend and hold The Home Depot harmless applies whether the claim or loss was alleged to have been caused in part by the negligence or fault of The Home Depot.**

17. The SBA requires that Fedders procure insurance coverage which names Home Depot as an additional insured, pursuant to the following language:

> **7.1 Supplier shall procure and maintain Commercial General Liability Insurance including Products Liability, Completed Operations and Contractual Liability coverage on an occurrence basis with limits of not less than the amounts specified on the Insurance Approval Request Form attached to this Supplier Buying Agreement for property damage and bodily injury or death. A Broad Form Supplier's Endorsement shall be maintained in said insurance policy with The Home Depot…named as an additional insured, requiring that Supplier's insurance be the primary policy with respect to any loss.**

18. Home Depot has performed all of its duties and obligations pursuant to the SBA with Fedders.

### THE ILLINOIS UNION INSURANCE POLICY

19. Illinois Union issued a policy of insurance to Fedders Corporation and Fedders North America Inc. running from September 30, 2005 to September 30, 2006, having policy number XSL G22078720. Said policy shall be referred to as the Illinois Union Insurance Policy.

20. The limit of liability for the Illinois Union Insurance Policy is $1,000,000 per occurrence, and $2,000,000 for products/completed operations.

21. A complete copy of the Illinois Union Insurance Policy is attached hereto as **Exhibit B**.

22. Home Depot qualifies as an additional insured under the Illinois Union Insurance Policy, as follows:

**ADDITIONAL INSURED – VENDORS**

\*\*\*

**SCHEDULE**

**Name of Additional Insured (Vendor): Any Vendor whom you have agreed to include as an additional insured under a written contract.**

**Your Products: All Products**

\*\*\*

**A. Section II – WHO IS AN INSURED is amended to include as an additional insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions.**

\*\*\*

**B. Where this endorsement applies, Condition 4. Other Insurance of Section IV – CONDITIONS, is amended to include the following:**

  **1. This insurance applies excess of the "Self Insured Retention", and if:**

   **a. Any additional insured under this policy has other liability [*sic*] which applies to a loss covered by this policy; and**

   **b. You have specifically agreed in a written contract executed prior to the loss that this insurance must be primary and non-contributory which such other insurance issued directly to such additional insured; then**

  **this insurance is primary and non-contributory to such other insurance.**

23. The Illinois Union Insurance Policy also carries a self-insured retention in the amount of $250,000, which is eroded by amounts spent by the insureds for defense and for indemnity, pursuant to the following language:

5

**SELF INSURED RETENTION ENDORSEMENT**

\*\*\*

**SECTION I – COVERAGES**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because "bodily injury"…or "property damage" to which this insurance applies, and which are in excess of the "Self Insured Retention" stated in the Declarations.

    \*\*\*

**III. ALLOCATED LOSS ADJUSTMENT EXPENSES – COVERAGES A AND B**

You are responsible for "Allocated Loss Adjustment Expense" according to your election indicated below. If no election is indicated, b. will apply.

X    a. You are responsible for the payment of the "Self Insured Retention." Under this option, any amount paid in "Allocated Loss Adjustment Expense" will be included toward the satisfaction of the "Self Insured Retention". We have the right but not the duty to defend any "suit". If we do not assume defense or control of the claim or "suit", we will reimburse to you all reasonable and necessary "Allocated Loss Adjustment Expense" you incur with our prior written approval, in excess of the "Self Insured Retention".

\*\*\*

**SECTION V – DEFINITIONS of the policy is amended to include the following additional definitions:**

22. "Allocated Loss Adjustment Expense" means the following:

    a. Any expenses, costs, or interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or "suit" to which this policy applies, which you, we or the Claim Service Organization, if one is shown above, under standard accounting practices, directly allocates to a particular claim, whether or not payment indemnifying the claimant(s) is made. Such

6

> **expenses include, but are not limited to…fees and expenses to attorneys for legal services;….**

24. Under the terms of the Illinois Union Insurance Policy, Illinois Union will have a duty to reimburse Home Depot for all defense expenses, including attorneys fees, and indemnity for all covered third party lawsuits.

## THE STANDARD FIRE LAWSUIT

25. On August 26, 2009, the Standard Fire Insurance Company, as subrogee of Russell and Stephanie Eisenstat, filed a lawsuit in the Massachusetts Superior Court of Suffolk County against Home Depot, Fedders and Samwha U.S.A., Inc. (hereinafter "Samwha"). That lawsuit shall be referred to as the "Standard Fire Lawsuit" and a copy of the original complaint is attached hereto as **Exhibit C**.

26. The Standard Fire Lawsuit was removed to and is currently pending in the United States District Court for the District of Massachusetts.

27. In the Standard Fire Lawsuit, the Standard Fire Insurance Company ("Standard Fire") alleges that it is subrogated to the rights of Russell and Stephanie Eisenstat under a policy of homeowners insurance after having paid monies for the benefit of the subrogors.

28. In the Standard Fire Lawsuit, Standard Fire alleges that the Eisenstats purchased a Hampton Bay dehumidifier from Home Depot in approximately 2001.

29. Standard Fire alleges that the Hampton Bay dehumidifier was manufactured by Fedders, and that a particular component of the dehumidifier was manufactured by Samwha.

30. Standard Fire alleges that, on August 30, 2006, a fire erupted in the basement of the Eisenstats' home.

31. Standard Fire alleges that the dehumidifier manufactured by Fedders caused the fire, and that, specifically, the capacitor manufactured by Samwha, which was a component of the dehumidifier, initially ignited the fire.

32. According to Standard Fire's initial disclosures in the Standard Fire Lawsuit, Standard Fire is seeking recovery of at least $1.6 million that it paid pursuant to the policy terms to the Eisenstats as a result of the property damage caused by the fire.

### HOME DEPOT'S TENDER OF THE STANDARD FIRE LAWSUIT

33. On September 28, 2009, Home Depot tendered its defense and indemnity for the Standard Fire Lawsuit to Illinois Union (through ACE, the parent company and claims handler for Illinois Union) and to Illinois Union's insured, Fedders via letters. Those letters are attached hereto as **Exhibit D**.

34. Illinois Union (through ACE) sent an email acknowledging Home Depot's tender on October 5, 2009. However, Illinois Union has not responded to Home Depot's tender in any other manner.

35. Home Depot sent another letter to Illinois Union (through ACE) on November 16, 2009. That letter is attached hereto as **Exhibit E**.

36. Illinois Union did not respond.

37. Home Depot sent another letter to Illinois Union (through ACE) on February 9, 2010. That letter is attached hereto as **Exhibit F**.

38. Other than to acknowledge Home Depot's tender, Illinois Union has not responded to Home Depot's request for defense and indemnity as of the date of the filing of this complaint.

39. Home Depot has incurred significant defense fees in the Standard Fire Lawsuit.

## COUNT I – DECLARATORY JUDGMENT

40. Home Depot repeats and realleges the allegations contained in paragraphs 1 through 39 as if fully alleged herein.

41. Home Depot qualifies as an additional insured under the Illinois Union Policy.

42. The Standard Fire Lawsuit allegedly arises out of Fedders' product, a dehumidifier which was allegedly sold to the Eisenstats by Home Depot.

43. As an additional insured under the Illinois Union Policy, Home Depot is entitled to reimbursement of all defense fees incurred after the $250,000 self insured retention has been exhausted.

44. To date, Illinois Union has not provided Home Depot with a defense as is required under the terms of the Illinois Union Policy.

45. To date, Illinois Union has not notified Home Depot that it will reimburse Home Depot for all of its defense fees after the $250,000 self insured retention has been exhausted.

46. As an additional insured under the Illinois Union Policy, Home Depot is entitled to be indemnified for any settlement or judgment in the Standard Fire

Lawsuit up to the limits of Illinois Union's liability after the $250,000 self insured retention has been exhausted.

47. To date, Illinois Union has not notified Home Depot that it will indemnify Home Depot for any settlement or judgment in the Standard Fire Lawsuit.

48. An actual controversy exists with regard to Illinois Union's obligations under the Illinois Policy.

WHEREFORE, Home Depot U.S.A., Inc. prays that this honorable court will enter a judgment in its favor and against Illinois Union Insurance Company for the following relief:

    A.    A declaration that Illinois Union must reimburse Home Depot for any and all defense expenses incurred in the Standard Fire Lawsuit after the $250,000 self insured retention has been exhausted; and

    B.    A declaration that Illinois Union must indemnify Home Depot for any judgment or settlement in the Standard Fire Lawsuit in excess of the $250,000 self insured retention up to Illinois Union's applicable limit of liability; and

    C.    Any further relief that this court deems necessary and proper.

## COUNT II – ESTOPPEL

49. Home Depot repeats and realleges the allegations contained in paragraphs 1 through 48 as if fully alleged herein.

50. Illinois Union has failed to respond to Home Depot's tender of defense and indemnity within a reasonable period of time.

51. Illinois Union is therefore estopped from relying on any policy defenses that it may have to coverage of Home Depot's tender of defense and indemnity.

WHEREFORE, Home Depot U.S.A., Inc. prays that this honorable court will enter a judgment in its favor and against Illinois Union Insurance Company for the following relief:

A. A declaration that Illinois Union Insurance Company is estopped from relying on any policy defenses which it may have otherwise had due to it's unreasonable delay in responding to Home Depot's tender; and

B. Any further relief that this court deems necessary and proper.

Respectfully submitted,

s/ Benjamin J. Galloway
Attorney for Plaintiff
Home Depot U.S.A., Inc.
Email: bjg@mcveyparsky-law.com

McVey & Parsky, LLC
30 N. LaSalle St., Ste. 2100
Chicago, IL 60602
Phone: (312) 551-2130
Fax: (312) 551-2131